UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Stan Koch & Sons Trucking, Inc.,

       Plaintiff,

  vs.

Stan Sing Lau, Dan Wu, WuLau, Inc.,
Meow Logistics, Inc., Straight Forwarding,
Inc., Wilmac Enterprises LLC, and CIL
Freight, Inc.,

       Defendants.

Court File No.:  21-cv-01338

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Stan Koch & Sons Trucking, Inc. ("Koch Trucking"), as and for its Complaint against Defendants Stan Sing Lau, Dan Wu, WuLau Inc., Meow Logistics, Inc., Straight Forwarding, Inc., Wilmac Enterprises LLC, and CIL Freight, Inc. (collectively, "Defendants"), states and alleges as follows:

**PARTIES, JURISDICTION, VENUE, AND NATURE OF THE ACTION**

1.    Koch Trucking is a corporation organized and headquartered in Minnesota, with its principal place of business located in Hennepin County at 4200 Dahlberg Dr., Suite 100, Golden Valley, Minnesota 55422. Koch Trucking, which also does business as Koch Logistics, provides a wide array of logistic services including domestic shipping, supply chain management, retail services, distribution and warehousing, and international maritime services. International maritime services provided by Koch Trucking are operated

1

by a wholly-owned subsidiary, Koch Maritime, Inc.[1]

2.      Stan Sing Lau ("Lau") is an individual residing, upon information and belief, at 4051 W. Viking Road, Apt. 262, Las Vegas, NV 89103.

3.      Dan Wu ("Wu") is an individual residing, upon information and belief, at 4051 W. Viking Road, Apt. 262, Las Vegas, NV 89103.

4.      WuLau, Inc. ("WuLau") is an inactive Minnesota corporation and, upon information and belief, did business at 15842 Cobblestone Lake Parkway, Apple Valley, Minnesota 55124.

5.      Meow Logistics, Inc. ("Meow Logistics") is a California corporation and, upon information and belief, its registered business address is 20275 Business Parkway, City of Industry, California 91789.

6.      Straight Forwarding, Inc. ("Straight Forwarding") is a California corporation and, upon information and belief, its registered business address is 20275 Business Parkway, City of Industry, California 91789.

7.      Wilmac Enterprises LLC ("Wilmac") is a Texas corporation and, upon information and belief, does business at 3753 North Beach Street, Fort Worth, TX 76137.

8.      CIL Freight, Inc. ("CIL Freight") is a Georgia corporation and, upon information and belief, its registered service address is 5161 Richton Street, Montclair, California 91763.

9.      This case arises under the Clayton Act, 15 U.S.C. § 15.

---

[1] For ease of reference, Stan Koch & Sons Trucking, Inc., Koch Logistics, and Koch Maritime, Inc. will hereinafter be referred to collectively as "Koch Trucking".

10.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 15, and 28 U.S.C. §§ 1331 and 1337. Plaintiff asserts claims for relief under Section 4 of the Clayton Act, 15 U.S.C. § 15. This Court has supplemental jurisdiction over the state law claims alleged in this action pursuant to 28 U.S.C. § 1367, as the state law claims are so related to the federal antitrust claims as to form part of the same case or controversy. Such supplemental or pendant jurisdiction will also avoid unnecessary duplication and multiplicity of actions, and should be exercised in the interests of judicial economy, convenience, and fairness.

11.    Venue and jurisdiction are proper in this District pursuant to 15 U.S.C. § 22 because Defendants transact business in this District.

12.    Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

13.    This is a civil action for commercial bribery in violation of Section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c), and Section 4 of the Clayton Act, 15 U.S.C. § 15; breach of contract; fraud; civil conspiracy; civil theft under Minn. Stat. § 604.14, *et seq.*; usurpation of corporate opportunity; breach of fiduciary duty; unjust enrichment; and piercing the corporate veil.

## **FACTUAL BACKGROUND**

14.    Lau was initially hired by Koch Trucking in 2010 as a customer service representative in Koch Logistics' Container Freight Station operations.

15.    Over the following years, Lau held a number of positions within Koch

Trucking. On November 1, 2015, Lau was promoted to Senior Manager of Business Development of Koch Maritime, Inc.

16.     On November 4, 2015, Lau signed an enforceable employment agreement. A true and correct copy of the partial employment agreement signed by Lau is attached hereto as **Exhibit A**. A true and correct copy of the complete, unsigned employment agreement is attached hereto as **Exhibit B**. Pursuant to this employment agreement, and the incorporated employment manual, Lau agreed, in exchange for valuable consideration, not to receive anything of value from potential customers and suppliers, not to engage in conduct which would compete with Koch Trucking's business activities, not to engage in activity that would constitute a conflict of interest for the employee which may result in a personal gain for that employee or a relative of that employee, not to accept outside employment which constitutes a conflict of interest, and not to accept kickbacks or bribes in connection with any transaction or business dealings involving Koch Trucking. Lau further agreed that neither he, nor his spouse or any other family member, would have any financial interest, including as an employee or other service provider, in any customer or supplier whom the he dealt as part of his job with Koch Trucking. A true and correct copy of the partial employment manual is attached hereto as **Exhibit C**.

17.     During his tenure with Koch Trucking, Lau was well-compensated, and in 2018 and 2019, he received total compensation of approximately $100,000 per year.

18.     In early 2018, Lau was promoted to Vice President of Procurement and Business Development of Koch Maritime. In this role, Lau was tasked with developing business relationships with international customers and entities needing shipping services

4

and overseas delivery. Lau was also responsible for negotiating the price to be paid by those customers to Koch Trucking for facilitating the shipping of the product to its destination. Additionally, Lau was responsible for negotiating the prices to be paid by Koch Trucking to certain freight forwarding companies which Koch Trucking contracted with to operate the container ships which would ultimately deliver the customer's products.

19.     In his role and capacity as an employee of Koch, Lau was placed in a position of trust and confidence by Koch as he was able to negotiate the price the customer would pay to Koch Trucking to facilitate the shipping of the customer's goods as well as the price Koch Trucking would pay to the freight forwarding companies for effecting delivery of the customer's goods.

20.     In his role and capacity as an employee of Koch Trucking, Lau was responsible for entering all customer orders as well as approving the billing for specific accounts. Lau was also responsible for approving all invoices for payment to freight forwarding companies and entering those invoices into Koch Trucking's systems for payment by the accounts payable department.

21.     Between 2014 and 2019, gross revenue in Lau's department grew by millions of dollars; however, as gross revenues grew, gross margins were actually declining. For example, between 2014 and 2016, Koch Trucking's gross margins on Lau's business was about 10%, but those margins dropped below 8% in 2017, 7% in 2018, and leveled off at about 7% in 2019, respectively.

22.     Based on his role as an officer of Koch, Lau was invited to quarterly meetings to discuss the rise in revenue with the correspondence decline in gross margins.

5

23.     At these quarterly meetings, Lau repeatedly represented that the decline in gross margins was due to an extremely aggressive agricultural shipping market, and the margins had to be decreased to be competitive in the marketplace. Koch reasonably relied upon these false statements, which allowed Lau to further perpetuate his fraud and theft scheme as noted below.

24.     In June 2019, Darren Nelson and Tom Torreson of Koch Trucking became suspicious that Lau had been engaged in some form of secret self-dealing. This suspicion was aroused when Lau used the company email system to send to his mortgage consultant information that was apparently necessary for Lau to close on the purchase of some real estate. That information included his and his wife's, Dan Wu, 2017 and 2018 tax returns which indicated that Lau and Wu had formed WuLau, Inc. and that WuLau, Inc. was receiving substantial payments from certain freight forwarding companies that Koch Trucking contracted with, and did business with, including Straight Forwarding, Meow Logistics, Wilmac Enterprises, and CIL Freight.

25.     Further cause for concern came to light on July 1, 2019 when a supplier, Hecny Brokerage Services, Inc. ("Hecny"), sent an email to Lau and John Felland, Vice President of Operations of Koch Trucking, confirming a price increase of $50 per file. The email string included a statement by a representative of Hecny that WuLau would receive $30 of this $50 per-file increase. Lau's response was to fraudulently conceal his kickback scheme by instructing Hecny that any email regarding this matter should be sent only to his personal email and not to his Koch Trucking work email.

26.     Lau's employment with Koch Trucking was terminated on or about July 2,

6

2019.

27.     Subsequent to Lua's termination, Koch Trucking questioned Hecny about the reason for the increase of $50 per file. Hecny ultimately rescinded that increase when it was clear that Lau was no longer employed by Koch Trucking.

28.     As information came to light regarding the existence of WuLau and the payment of funds to Lau, Wu, and/or WuLau by freight forward suppliers with whom Koch Trucking did business, Koch Trucking reported the matter to law enforcement which began an investigation. Law enforcement investigators reviewed the company email of Lau, obtained the personal email records of Lau, and obtained the bank statements for Lau, Wu, and WuLau.

29.     For the period from November 2015 to June 2019, law enforcement found payments from suppliers of Koch Trucking to Lau, Wu, and/or WuLau totaling over $800,000.

30.     Koch Trucking became aware that Lau, with the active and knowing participation of several freight forwarding companies with which Koch Trucking did business, had established a kickback scheme for his own personal enrichment and at the expense of Koch Trucking. In effect, Lau negotiated prices that Koch Trucking would pay to freight forwarding companies, including defendants Straight Forwarding, CIL Freight, Meow Logistics, and Wilmac Enterprises (collectively "Freight Forwarding Defendants"), and those prices would be artificially inflated by inaccurate rates or an additional cost such as a miscellaneous fee which would be paid to Lau, Wu, and/or WuLau as a kickback.

31.     On April 3, 2017, WuLau, Inc. was incorporated in the state of Minnesota by

7

Lau and Wu. Lau acted as the registered agent of WuLau and Wu acted as chief executive officer of WuLau.

32.     Beginning shortly after the incorporation of WuLau, an account titled in the name of WuLau began receiving payments from the Freight Forwarding Defendants. Upon information and belief, each and every transfer from Freight Forwarding Defendants to the WuLau bank accounts were kickbacks resulting from Lau's fraudulent scheme.

33.     Upon information and belief, the funds contained in the account titled in the name of WuLau were routinely and without a legitimate business purpose transferred to accounts owned by Lau and Wu individually. These funds were routinely used to pay for Lau and Wu's personal living expenses.

34.     Upon information and belief, WuLau was incorporated for the sole purpose of receiving kickbacks from Lau's fraudulent scheme and obfuscating the transfer of kickbacks from the Freight Forwarding Defendants to Lau and Wu.

35.     Upon information and belief, Straight Forwarding, a freight forwarding company which contracts with Koch Trucking, knowingly and purposefully participated in and enabled Lau's kickback scheme by misrepresenting their rates to Koch Trucking and paying kickbacks to Lau, Wu, and/or WuLau to induce Lau to cause Koch Trucking to purchase the services of Straight Forwarding for Straight Forwarding's own commercial gain.

36.     Between November 3, 2015 and June 10, 2019, Koch Trucking paid Straight Forwarding in excess of $10,000,000.00 for what Koch Trucking reasonably believed to be Straight Forwarding's services. Unknown to Koch Trucking, for a period from

approximately November 2015 to June 2019, after receiving payment of the price negotiated by Lau from Koch Trucking, Straight Forwarding proceeded to pay a kickback to Lau, Wu, or WuLau for procuring the contract for Straight Forwarding.

37.     On March 6, 2019, Straight Forwarding issued a check (Check Number 28869) and invoice to WuLau for $79,933.25. Upon information and belief, these funds were kickbacks related to prices negotiated by Lau to be paid to Straight Forwarding by Koch Trucking. These funds were, in large part, subsequently transferred directly from WuLau's account to the personal account of Lau.

38.     Upon information and belief, there are many similar fraudulent transactions from Straight Forwarding to Lau, Wu, and/or WuLau totaling in excess of $730,000.00. A summary exhibit listing kickback transfers from Straight Forwarding to Lau, Wu, and/or WuLau between November 3, 2015 and June 10, 2019 are attached hereto as **Exhibit D**.

39.     Upon information and belief, these funds in excess of $730,000.00 were derived from the inflated rates paid by Koch Trucking to Straight Forwarding as a result of negotiation by Lau and Straight forwarding, through its employees and agents. All of the funds which were overcharged to Koch Trucking and subsequently kicked back to Lau, Wu, and/or WuLau should have been additional gross margin income for Koch Trucking.

40.     Upon information and belief, CIL Freight, a freight forwarding company which contracts with Koch Trucking, knowingly and purposefully participated and enabled Lau's kickback scheme by misrepresenting their rates to Koch Trucking and paying kickbacks to Lau, Wu, and/or WuLau to induce Lau to cause Koch Trucking to purchase the services of CIL Freight for CIL Freight's own commercial gain.

41.    Between January 28, 2014 and February 20, 2019, Koch Trucking paid CIL Freight in excess of $400,000.00 for what Koch Trucking reasonably believed to be CIL Freight's services. Unknown to Koch Trucking, for a period from approximately December 2016 to February 2019, after receiving payment of the price negotiated by Lau from Koch Trucking, CIL Freight proceeded to pay a kickback to Lau, Wu, or WuLau for procuring the contract for CIL Freight.

42.    On October 24, 2018, CIL Freight issued a check (Check Number 07620) to WuLau for $1,980.00. Upon information and belief, these funds were kickbacks related to prices negotiated by Lau to be paid to CIL Freight by Koch Trucking. Upon information and belief, there are many similar fraudulent transactions from CIL Freight to Lau, Wu, and/or WuLau totaling in excess of $22,000.00. A summary exhibit listing kickback transfers from CIL Freight to Lau, Wu, and/or WuLau between December 23, 2016 and February 20, 2019 are attached hereto as **Exhibit E**.

43.    Between December 23, 2016 and February 20, 2019, CIL Freight paid Lau, Wu, and/or WuLau in excess of $22,000.00. Upon information and belief, these funds were derived from the inflated rates paid by Koch Trucking to CIL Freight as a result of negotiation by Lau and CIL Freight, through its employees and agents. All of the funds which were overcharged to Koch Trucking and subsequently kicked back to Lau, Wu, and/or WuLau should have been additional gross margin income for Koch Trucking.

44.    Upon information and belief, Meow Logistics, a freight forwarding company which contracts with Koch Trucking, as well as its employees and agents, knowingly and purposefully participated and enabled Lau's kickback scheme and made payments to Lau,

Wu, and/or WuLau to induce Lau to cause Koch Trucking to purchase the services of Meow Logistics for Meow Logistics' own commercial gain.

45.   Between February 4, 2016 and February 12, 2019, Koch Trucking paid Meow Logistics in excess of $400,000.00, for what Koch Trucking reasonably believed to be Meow Logistics' services. Unknown to Koch Trucking, for a period from approximately November 2017 to February 2019, after receiving payment of the price negotiated by Lau from Koch Trucking, Meow Logistics proceeded to pay a kickback to Lau, Wu, or WuLau for procuring the contract for Meow Logistics.

46.   On September 19, 2018, Meow Logistics issued a check (Check Number 11862) to WuLau for $2,109.33. Upon information and belief, these funds were kickbacks related to prices negotiated by Lau to be paid to Meow Logistics by Koch Trucking. Upon information and belief, there are many similar fraudulent transactions from Meow Logistics to Lau, Wu, and/or WuLau totaling in excess of $9,000.00. A summary exhibit listing kickback transfers from Meow Logistics to Lau, Wu, and/or WuLau between November 3, 2017 and February 12, 2019 is attached hereto as **Exhibit F**.

47.   Between November 3, 2017 and February 12, 2019, Meow Logistics paid Lau, Wu, and/or WuLau in excess of $9,000.00. Upon information and belief, these funds were derived from the inflated rates paid by Koch Trucking to Meow Logistics as a result of negotiation by Lau and Meow Logistics, through its employees and agents. All of the funds which were overcharged to Koch Trucking and subsequently kicked back to Lau, Wu, and/or WuLau should have been additional gross margin income for Koch Trucking.

48.   Upon information and belief, Wilmac, a freight forwarding company which

contracts with Koch Trucking, as well as its employees and agents, knowingly and purposefully participated and enabled Lau's kickback scheme and made payments to Lau, Wu, and/or WuLau to induce Lau to cause Koch Trucking to purchase the services of Wilmac for Wilmac's own commercial gain.

49.     Between December 31, 2014 and June 11, 2019, Koch Trucking paid Wilmac in excess of $1,500,000.00, for what Koch Trucking reasonably believed to be Wilmac's services. Unknown to Koch Trucking, for a period from approximately December 2015 to June 2019, after receiving payment of the price negotiated by Lau from Koch Trucking, Wilmac proceeded to pay a kickback to Lau, Wu, or WuLau for procuring the contract for Wilmac.

50.     On February 14, 2019, Wilmac issued a check (Check Number 37385) to WuLau for $21,925.00. Upon information and belief, these funds were kickbacks related to prices negotiated by Lau to be paid to Wilmac by Koch Trucking. Upon information and belief, there are many similar fraudulent transactions from Wilmac to Lau, Wu, and/or WuLau totaling in excess of $40,000.00. A summary exhibit listing kickback transfers from Wilmac to Lau, Wu, and/or WuLau between December 1, 2015 and June 18, 2019 are attached hereto as **Exhibit G**.

51.     Between December 1, 2015 and June 18, 2019, Wilmac paid Lau, Wu, and/or WuLau in excess of $40,000.00. Upon information and belief, these funds were derived from the inflated rates paid by Koch Trucking to Wilmac as a result of negotiation by Lau and Meow Logistics, through its employees and agents. All of the funds which were overcharged to Koch Trucking and subsequently kicked back to Lau, Wu, and/or WuLau

should have been additional gross margin income for Koch Trucking.

52.    Between November 2015 and the termination of Lau's employment by Koch Trucking, Lau, Wu, and/or WuLau received over $800,000 in fraudulent and unlawful compensation from the Freight Forwarding Defendants.

**COUNT I**
**BREACH OF CONTRACT**
**AGAINST STAN LAU**

53.    Koch Trucking incorporates the allegations in the Paragraphs above as though fully set forth herein.

54.    Lau's employment contracts with Koch Trucking, including the employee manual of Koch Trucking, are valid, binding, and enforceable contracts.

55.    Under the terms of Lau's employment with Koch Trucking, Lau agreed that he would not to receive anything of value from potential customers and suppliers, not engage in conduct which would compete with Koch Trucking's business activities, not engage in activity that would constitute a conflict of interest for the employee which may result in a personal gain for that employee or a relative of that employee, not accept outside employment which constitutes a conflict of interest, and not accept kickbacks or bribes in connection with any transaction or business dealings involving Koch Trucking. Lau further agreed that neither he, nor his spouse or any other family member, would have any financial interest, including as an employee or other service provider, in any customer or supplier whom the he dealt as part of his job with Koch Trucking.

56.    By establishing a kickback scheme involving, and subsequently accepting unlawful compensation from, the Freight Forwarding Defendants at the direct expense of

13

Koch Trucing, Lau breached his obligations under his contracts with Koch Trucking.

57.     Lau has further breached his obligations under those contracts by, upon information and belief, facilitating and participating in Dan Wu's employment or contracting relationship with the Freight Forwarding Defendants as reflected in Dan Wu's tax returns. This arrangement was a material breach of the contracts between Lau and Koch Trucking.

58.     As a direct and proximate result of Lau's intentional, material breaches of contract, Koch Trucking has sustained damages in excess of $50,000 to be determined at trial.

**COUNT II**
**FRAUD**
**AGAINST STAN LAU**

59.     Koch Trucking incorporates the allegations in the Paragraphs above as though fully set forth herein.

60.     Lau made numerous fraudulent misrepresentations and omissions in connection to his kickback scheme, including: (i) false statements regarding the true rates charged by the Freight Forwarding Defendants; (ii) false statements to Koch Trucking agents, employees, and officers that the decrease in gross profits was the result of heightened competition. Each and every invoice for inflated payments to the Freight Forwarding defendants approved by Lau and entered into Koch Trucking's system by Lau constitutes a fraudulent representation.

61.     With his fraudulent representations and omissions, Lau intended to induce Koch Trucking to pay the artificially inflated rates to the Freight Forwarding Defendants.

14

These artificially inflated rates were integral to Lau's kickback scheme designed to benefit himself personally, Dan Wu, and WuLau, Inc.

62.     Lau took deliberate steps to fraudulently conceal his fraudulent kickback scheme from Koch Trucking which included the use of communication channels outside of Koch Trucking's knowledge to orchestrate his kickback scheme.

63.     Koch Trucking reasonably relied on Lau's fraudulent misrepresentations and omissions.

64.     Lau's fraudulent misrepresentations induced Koch Trucking to, over a period of several years, pay inflated rates to the Freight Forwarding Defendants in an amount greater than $800,000.00. These overpayments were ultimately received by Lau, Dan Wu, and WuLau, Inc. as a result of Lau's kickback scheme.

65.     As a direct and proximate result of Defendants' fraudulent conduct, Koch Trucking has been damaged in an amount believed to be in excess of $50,000, plus costs and expenses, including reasonable attorneys' fees, the exact amount of which will be determined at trial.

## COUNT III
## CIVIL CONSPIRACY
## AGAINST ALL DEFENDANTS

66.     Koch Trucking incorporates the allegations in the Paragraphs above as though fully set forth herein.

67.     All Defendants have conspired and joined efforts, by combining with each other and acting in concert with a common purpose, to unlawfully violate Lau's obligations to Koch Trucking, usurp corporate opportunities rightfully belonging to Koch Trucking,

violate Minnesota's Civil Theft Statute (Minn. Stat. § 604.14), and commit tortious acts against Koch Trucking.

68.    Defendants' combination and action as set forth herein was with a common purpose to accomplish an unlawful act, or to accomplish a lawful act by unlawful means and constitute civil conspiracy.

69.    As a direct and proximate result of Defendants' civil conspiracy, Koch Trucking is entitled to damages in an amount believed to be in excess of $50,000, plus costs and expenses, including reasonable attorneys' fees, the exact amount of which will be determined at trial.

**COUNT IV**
**COMMERCIAL BRIBERY (15 U.S. Code § 13; 15 U.S. Code § 15)**
**AGAINST FREIGHT FORWARDING DEFENDANTS AND STAN LAU**

70.    Koch Trucking incorporates the allegations in the Paragraphs above as though fully set forth herein.

71.    15 U.S. Code § 13 provides: "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods . . ."

72.    15 U.S. Code § 15(a) provides a private cause of action for any person injured in his business or property by reason of anything forbidden in the antitrust laws.

73.    Each of the Freight Forwarding Defendants, by and through their agents and officers, paid Lau, Wu, and Wulau money as part of a kickback scheme organized by Lau.

74.     At all times relevant to the claims contained in this Complaint, Lau was an agent and fiduciary of Koch Trucking.

75.     Koch Trucking was unaware of the kickbacks paid by the Freight Forwarding Defendants to Lau, Wu, and/or WuLau and did not consent to the payments.

76.     Freight Forwarding Defendants made the kickback payments described in this Complaint to Lau, Wu, and WuLau to influence Lau, as an agent and fiduciary of Koch Trucking, to secure Koch Trucking's business for their respective freight forwarding companies.

77.     No legitimate services were provided by Lau to the Freight Forwarding Defendants in exchange for the kickbacks.

78.     The aforesaid conduct constitutes a violation of 15 U.S.C. 13(c) and constitutes commercial bribery.

79.     As a direct and proximate result of the bribery and conduct in violation of 15 U.S.C. 13(c), Koch Trucking suffered actual Antitrust damages. The presence of the kickbacks, derived from funds paid by Koch Trucking, effectively precluded the realization of Koch Trucking's maximum profit potential by forcing them to pay higher rates than they otherwise would have except for the kickbacks and causing injury to Koch Trucking's business.

80.     As a direct and proximate result of the Freight Forwarding Defendants' and Lau's actions, Koch Trucking is entitled to treble damages in an amount believed to be in excess of $50,000, plus costs and expenses, including reasonable attorneys' fees, the exact amount of which will be determined at trial.

## COUNT V
### CIVIL THEFT UNDER MINN. STAT. § 604.14
### AGAINST STAN LAU, DAN WU, AND WULAU, INC.

81.     Koch Trucking incorporates the allegations in the Paragraphs above as though fully set forth herein.

82.     Minnesota Statutes section 604.14 provides: A person who steals personal property from another is civilly liable to the owner of the property for its value when stolen plus punitive damages of either $50 or up to 100 percent of its value when stolen, whichever is greater.

83.     Minnesota Statutes section 609.52, subdivision 2(a) defines acts constituting theft, including "by swindling, whether by artifice, trick, device, or any other means, obtains property or services from another person."

84.     By establishing and operating a kickback scheme under which Lau arranged for the Freight Forwarding Defendants to overcharge Koch Trucking and remit a portion of the funds paid by Koch Trucking to Lau, Wu, and/or WuLau, Lau committed acts constituting theft under Minnesota Statutes section 609.52, subdivision 2(a).

85.     Due to Lau's acts constituting theft, Koch has been damaged in an amount to be determined at trial but believed to be in excess of $50,000.

## COUNT VI
### USURPATION OF CORPORATE OPPORTUNITY
### AGAINST STAN LAU

86.     Koch Trucking incorporates the allegations in the Paragraphs above as though fully set forth herein.

87.     Koch Trucking employed Lau as a Vice President of Risk Management and

later Vice President of Procurement and Business development, responsible for procuring suppliers in need of shipping services, negotiating favorable rates to be paid to Koch Trucking for facilitating transportation of the suppliers' goods, and negotiating favorable rates to be paid by Koch Trucking to freight forwarding companies. Due to the position of trust Lau held within Koch Trucking, Lau was broadly responsible for ensuring the business development and overall profitability of Koch Trucking's maritime business.

88.     Lau owed a duties of loyalty, good faith, and fair dealing to Koch Trucking as an employee of Koch Trucking.

89.     Despite owing these duties, Lau seized business opportunities for himself that otherwise would have gone to Koch Trucking's benefit. Specifically, Lau enriched himself at the direct expense of Koch Trucking by organizing and operating a kickback scheme in coordination with the Freight Forwarding Defendants.

90.     While employed by Koch Trucking, Lau arranged for payments from Koch Trucking to the Freight Forwarding Defendants., which included mark-ups devised by Lau which were subsequently remitted to Lau personally for his enrichment.

91.     Koch Trucking had an interest in negotiating the lowest and most advantageous payments to freight forwarding companies as part of its standard business practice and an expectancy to pay no more than the true rates provided by freight forwarding companies.

92.     Due to Lau's actions, Koch Trucking could not capitalize on the corporate opportunities. Rather than realizing higher gross margins, Koch Trucking's margins were significantly reduced by Lau's usurpation of their corporate opportunities.

19

93.     As a direct and proximate result of Lau's actions, Koch Trucking is entitled to damages in an amount believed to be in excess of $50,000, plus costs and expenses, including reasonable attorneys' fees, the exact amount of which will be determined at trial.

**COUNT VII**
**BREACH OF FIDUCIARY DUTY**
**AGAINST STAN LAU**

94.     Koch Trucking incorporates the allegations in the Paragraphs above as though fully set forth herein.

95.     Lau owed fiduciary duties, including the duty of loyalty and good faith, to Koch Trucking by virtue of his role as an employee and active manager of Koch Trucking.

96.     Lau repeatedly breached his duty of loyalty and good faith by, among other things, misusing his position as an employee of Koch Trucking to enrich himself in breach of his employment contracts and usurp Koch Trucking's business opportunities on behalf of himself, Dan Wu, and WuLau, Inc.

97.     As a direct and proximate result of Defendants' wrongful conduct, Koch Trucking has been damaged in an amount believed to be in excess of $50,000, plus costs and expenses, including reasonable attorneys' fees, the exact amount of which will be determined at trial.

**COUNT VIII**
**UNJUST ENRICHMENT**
**AGAINST STAN LAU, DAN WU, AND WULAU INC.**

98.     Koch Trucking incorporates the allegations in the Paragraphs above as though fully set forth herein.

99.     Lau, Dan Wu, and WuLau have been unjustly enriched at the expense and to

the detriment of Koch Trucking. Lau, Dan Wu, and WuLau, Inc. accepted the benefits of undisclosed kickbacks, fees, and interest under circumstances that make it unjust for Lau, Dan Wu, or WuLau to retain such kickbacks, fees, and interest.

100.    As a direct and proximate result of the aforementioned unjust enrichment, Koch Trucking has suffered damages suffered damages. By reason thereof, Koch Trucking is entitled to a judgment against Lau, Dan Wu, and WuLau, Inc. for its damages in an amount exceeding $50,000.

## COUNT IX
## PIERCING THE CORPORATE VEIL OF WULAU, INC.

101.    Koch Trucking incorporates the allegations in the Paragraphs above as though fully set forth herein.

102.    WuLau, Inc. was owned by Stan Lau, and Stan Lau acted as WuLau's registered agent at all times during its existence. Dan Wu, the spouse of Stan Lau, was CEO of WuLau at all times during its existence. Stan Lau and Dan Wu made all corporate decisions.

103.    WuLau was an alter ego for Defendants Stan Lau and Dan Wu by, among other things:

      a.    Failing to observe corporate formalities;

      b.    Defendants Stan Lau and Dan Wu used their positions as the only two persons with authority over WuLau, Inc. to siphon funds out of WuLau, Inc.,

      c.    WuLau had no members, officers, or agents other than Defendants Stan

Lau and Dan Wu; and

d. WuLau was a corporate entity merely as a façade for Defendant Stan Lau's and Dan Wu's individual dealings, namely benefiting from a kickback scheme with the Freight Forwarding Defendants.

104. Defendants Stan Lau and Dan Wu made transfers from WuLau, a company they alone owned and controlled, and the transfers were made to Stan Lau and Dan Wu individually and to other entities Stan Lau and Dan Wu owned, for their personal enrichment.

105. Defendants Stan Lau and Dan Wu are liable to Koch Trucking, just as WuLau, Inc. was, for its damages in an amount exceeding $50,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Koch Trucking seeks judgment against Defendants as follows:

1. Damages and restitution in an amount to be proven at trial;

2. Any other relief authorized by statute or law, including but not limited to an award of costs, disbursements, and attorney's fees; and

3. For such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues.

**HELLMUTH & JOHNSON**

.

Dated: June 4, 2021                   By /s/Terrance W. Moore
                                      Terrance W. Moore, #0194748
                                      Katherine A. Herman, #0400831
                                      8050 W. 78th St.
                                      Edina, MN 55439
                                      Phone: 952-941-4005
                                      Fax: 952-941-2337
                                      Email: tmoore@hjalwfirm.com
                                      Email: kherman@hjlawfirm.com

                                    **ATTORNEYS FOR PLAINTIFF**

23