# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Stan Koch & Sons Trucking, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Stan Sing Lau, et al., <br><br> Defendants. | Case No. 21-cv-01338 (SRN/KMM) <br><br><br> **ORDER** |

Carol R. M. Moss, Katherine A. Herman, and Terrance W. Moore, Hellmuth & Johnson PLLC, 8050 West 78th Street, Edina, MN 55439, for Plaintiff.

Robert A. Gust, Gust Law Firm, PLLC, 3800 American Boulevard, Suite 1500, Minneapolis, MN 55431, for Defendants Stan Sing Lau, Dan Wu, and WuLau, Inc;

Barbara P. Berens and Carrie L. Zochert, Berens & Miller, P.A., 3720 IDS Center, 80 South 8th Street, Minneapolis, MN 55402, for Defendants Meow Logistics, Inc. and Straight Forwarding, Inc.; and

Andrew F. Newman and Daniel V. Kinsella, Clark Hill, 130 East Randolph Street, Suite 3900, Chicago, IL 60601; and Michael C. Glover, DeWitt LLP, 901 Marguette Avenue, Suite 2100, Minneapolis, MN 55402, for Defendant Wilmac Enterprises LLC.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motions to Dismiss [Doc. Nos. 26, 37, 48] filed by Defendants Wilmac Enterprises LLC ("Wilmac"), WuLau, Inc. ("WuLau"), Stan Sing Lau, and Dan Wu, which were joined by Defendants Meow Logistics, Inc. ("Meow Logistics") and Straight Forwarding, Inc. ("Straight Forwarding"). Also before the Court are the Motion for Judgment on the Pleadings [Doc. No. 44] and the Motion to Transfer Venue [Doc. No. 53] filed by Defendants Meow Logistics and Straight Forwarding. Based

1

on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** all of the Defendants' motions to dismiss and **DENIES** the motions for judgment on the pleadings and to transfer venue as moot.

I.  BACKGROUND

  A.  The Parties

This action arises from an alleged kickback scheme involving multiple parties with various roles. For clarity, the Court provides a summary of the parties and their roles in the alleged scheme.

Plaintiff Stan Koch & Sons Trucking, Inc. ("Koch Trucking") is a Minnesota corporation that provides logistic services to companies. (Compl. [Doc. No. 1] ¶ 1.) Those services include domestic shipping, supply chain management, retail services, distribution and warehousing, and international maritime services. (*Id.*) The international maritime services are operated by a wholly-owned subsidiary named Koch Maritime, Inc. ("Koch Maritime"). (*Id.*)

Defendant Stan Sing Lau was an employee of Kock Trucking for about nine years. (*Id.* ¶¶ 14–18.) From 2015 to 2019, Lau held high-level management positions in the Koch Maritime segment of the business. (*Id.* ¶¶ 15, 18.) In those roles, Lau developed business relationships with international customers that needed shipping services. (*Id.* ¶ 18.) He also negotiated pricing with freight companies that would ultimately deliver the customers' products. (*Id.*) Those companies included Defendants Meow Logistics, Straight Forwarding, Wilmac, and CIL Freight, Inc. (together, "Freight Forwarding Defendants").

(*Id.* ¶ 30.) Lau is alleged to have used his position to facilitate a kickback scheme with the Freight Forwarding Defendants. (*Id.* ¶ 30.)

WuLau is a Minnesota corporation that was formed in 2017. (*Id.* ¶ 31.) It is the entity that was used to facilitate the alleged kickback scheme. (*Id.* ¶ 32.)

Defendant Dan Wu is Lau's wife and the Chief Executive Officer of WuLau. (*Id.* ¶¶ 24, 31.) She is alleged to have received payments from the alleged kickback scheme. (*See id.* ¶¶ 35–52.)

Defendants Meow Logistics and Straight Forwarding are California corporations that specialize in freight forwarding. (*Id.* ¶¶ 5–6, 35, 44.) They are alleged to have paid kickbacks to secure contracts with Koch Trucking. (*Id.* ¶¶ 35–39, 44–47.)

Defendant Wilmac, a Texas company, and Defendant CIL Freight, Inc., a Georgia corporation, are also alleged to have engaged in the kickback scheme to obtain contracts with Kock Trucking. (*Id.* ¶¶ 7–8, 40–43, 48–51.)

**B.    Facts**

Koch Trucking hired Lau in 2010 as a customer service representative. (*Id.* ¶ 14.) During his first five years with the company, he held a variety of positions, and then, in 2015, he was promoted to Senior Manager of Business Development of Koch Maritime. (*Id.* ¶ 15.) As part of that new role, Lau agreed not to use his position to receive kickbacks, bribes, or anything of value from customers or potential customers. (*Id.* ¶ 16.). He further promised that neither he, nor a family member, would take any financial interest in any customer or supplier that he interacted with by means of his work for Koch Trucking. (*Id.*)

In 2018, Lau was promoted to Vice President of Procurement and Business Development of Koch Maritime. (*Id.* ¶ 18.) In this role, he negotiated customer pricing and the prices that Koch Trucking would pay to freight forwarding companies. (*Id.* ¶ 19.) He also approved all invoices for payment to those companies. (*Id.* ¶ 20.)

### 1. Lau's Department

From 2014 to 2019, gross revenue in Lau's department grew by millions of dollars, while its gross margins declined. (*Id.* ¶ 21.) Throughout that time, Koch Trucking held quarterly meetings, which Lau attended. (*Id.* ¶ 22.) During those meetings, Lau "repeatedly represented that the decline in gross margins was due to an extremely aggressive agricultural shipping market, and the margins had to be decreased to be competitive in the marketplace." (*Id.* ¶¶ 22–23.) Koch Trucking relied on those representations. (*Id.* ¶ 23.)

### 2. The Alleged Scheme

In June of 2019, Koch Trucking became suspicious that Lau was engaging in a self-dealing scheme. (*Id.* ¶ 24.) The suspicions arose when Lau sent an e-mail, using the company system, to his mortgage consultant and attached his and Wu's 2017 and 2018 tax returns. (*Id.*) Those returns showed that Lau and Wu had formed WuLau, which received substantial payments from the Freight Forwarding Defendants. (*Id.*)

This suspicion was further confirmed on July 1, 2019. (*Id.* ¶ 25.) In an e-mail to Lau and Koch Trucking's Vice President of Operations, a supplier agreed to a $50 price increase, noting that sixty percent of that increase would be paid to WuLau—not Koch Trucking. (*Id.*) Lau responded by instructing the customer to send correspondence on this

4

matter to his personal e-mail account. (*Id.*) Shortly thereafter, Koch Trucking terminated Lau's employment. (*Id.* ¶ 26.)

Koch Trucking then contacted law enforcement, which investigated Lau, Wu, and WuLau. (*Id.* ¶ 28.) From that investigation, Koch Trucking discovered that Lau had used his position to negotiate prices with the Freight Forwarding Defendants, artificially inflating the prices to include a kickback fee that he would receive. (*Id.*) As part of this scheme, Lau and Wu incorporated WuLau as a Minnesota corporation. (*Id.* ¶ 31.) Lau was its registered agent, while Wu acted as the Chief Executive Officer. (*Id.*) WuLau had its own bank accounts where kickback funds were deposited. (*See id.* ¶ 32.)

Koch Trucking further discovered that the Freight Forwarding Defendants knowingly paid these kickbacks to secure contracts with Koch Trucking. (*Id.* ¶ 30, 36, 41, 45, 49.) In particular, Koch Trucking discovered that Straight Forwarding paid kickbacks exceeding $730,000; Wilmac paid kickbacks exceeding $40,000; CIL Freight paid kickbacks exceeding $22,000; and Meow Logistics paid kickbacks exceeding $9,000. (*Id.* ¶ 39, 42, 47, 50–51.) In total, the Freight Forwarding Defendants paid kickbacks amounting to more than $800,000. (*Id.* ¶¶ 29, 52.) In doing so, it is alleged that those Defendants purposefully misrepresented their rates to Koch Trucking. (*Id.* ¶¶ 35, 39–40, 43–44, 47–48, 51.)

C.  **Procedural History**

Plaintiff filed the Complaint on June 4, 2021, alleging nine causes of action. (*See generally* Compl.) Plaintiff alleges one violation of federal law for commercial bribery

5

under 15 U.S.C. § 13(c).  (*Id.* ¶¶ 70–80.)  The remaining eight counts allege violations of Minnesota statutes and common law.  (*Id.* ¶¶ 53–69, 81–105.)

The Defendants responded to the Complaint in different ways.  Wilmac, Lau, Wu, and WuLau filed motions to dismiss.[1]  Meow Logistics and Straight Forwarding answered the Complaint, filed a motion for judgement on the pleadings, filed a motion to transfer venue, and then joined the motions to dismiss at oral argument.  (Answer [Doc. Nos. 14, 15.]; Mot. J. Pleadings [Doc. No. 44]; Mot. Transfer Venue [Doc. No. 53].)  CIL Freight has yet to appear in this action.[2]

As relevant here, the Defendants assert that the federal claim should be dismissed because commercial bribery under 15 U.S.C. § 13(c), which is commonly referred to as Section 2(c) of the Robinson-Patman Act, does not apply to the sale of transportation services.  (Defs.' Mem. [Doc. No. 28] at 4–6.)  Because the federal claim fails, Defendants argue that the Court should also dismiss the state-law claims without prejudice.  (*Id.* at 13–14.)

## II.   DISCUSSION

### A.   Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable

---

[1]   Lau and Wu also filed a motion to dismiss for lack of personal jurisdiction based on insufficient service of process [Doc. No. 48], which has been withdrawn [Doc. No. 77].

[2]   CIL Freight stipulated to an extension in time to answer the Complaint [Doc. No. 20], which this Court granted [Doc. No. 22].  However, CIL Freight never filed an Answer nor did any attorney file a notice of appearance.

to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings," as well as statements of counsel at oral argument that raise new facts not alleged in the pleadings. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (internal quotation marks and citation omitted). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."[3] *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (internal quotation marks and citation omitted).

B. **Section 2(c) of the Robinson-Patman Act (Count IV)**

Defendants contend that Count IV should be dismissed because the Robinson-Patman Act only applies to the sale of goods, wares, or merchandise—not to intangible services like transportation. (Defs.' Mem. at 4–6.) The Court agrees.

Section 2(c) of the Robinson-Patman Act, 15 U.S.C. § 13(c), provides:

> It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the

---

[3] For purposes of this motion, the Court has considered only the Complaint.

7

sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid.

Enacted in 1936, the Robinson-Patman Act, which amended the Clayton Act's price discrimination proscriptions, sought to "curb and prohibit all devices by which large buyers gained discriminatory preferences over smaller ones by virtue of their greater purchasing power." *F.T.C. v. Henry Broch & Co.*, 363 U.S. 166, 168 (1960). At that time, large companies found ways around the Clayton Act to gain a competitive advantage when purchasing commodities. *Id.* at 168–69. For example, a buying company would create a fictitious broker that it employed, paying it a commission on a sale, which would then be returned to the company, effectively reducing its price. *Id.* at 169. This was the primary scheme that Congress sought to destroy with Section 2(c) of the Robinson-Patman Act. *Id.* Even so, Congress drafted Section 2(c) to capture "all other means by which brokerage could be used to effect price discrimination." *Id.*

Plaintiff argues that Section 2(c) applies to transportation services, pointing out that its text is not explicitly limited to the sale of goods, wares, or merchandise. (Pl.'s Opp'n at 8–12.) But neither does its text expressly apply to the sale of intangibles like services. Accordingly, the Court reviews the Robinson-Patman Act as a whole. *See United States v. Jones*, 811 F.2d 444, 447 (8th Cir. 1987) ("In determining legislative intent, we must consider the statute read as a whole."); *Sierra Club v. Clark*, 755 F.2d 608, 613 (8th Cir. 1985) (interpreting the at-issue section of the Endangered Species Act consistently with the other sections).

8

Congress adopted the Robinson-Patman Act to prevent unfair business practices "in connection with the *sale of goods*." *Broch*, 363 U.S. at 174 (emphasis added). No dispute exists that Section 2(a) is limited to commodities, barring claims related to services. *See, e.g.*, *TV Signal Co. v. Am. Tel. & Tel. Co.*, 462 F.2d 1256, 1259 (8th Cir. 1972) (affirming dismissal of the Robinson-Patman Act claim because "a telephone pole was not a commodity" under Section 2(a)); *Bichel Optical Lab'ys, Inc. v. Marquette Nat'l Bank*, 336 F. Supp. 1368, 1371 (D. Minn. 1971), *aff'd*, 487 F.2d 906 (8th Cir. 1973) (dismissing the Robinson-Patman claim because a loan, under Section 2(a), is not a commodity); *Gen. Shale Prods. Corp. v. Struck Const. Co.*, 132 F.2d 425, 428 (6th Cir. 1942) (affirming the same because a construction contract is not a sale of a commodity under Section 2(a)); *Ambook Enters. v. Time Inc.*, 612 F.2d 604, 610, 620 (2d Cir. 1979) (affirming summary judgment on Robinson-Patman Act claims because newspaper advertising is not a commodity protected under Section 2(a)); *Gaylord Shops, Inc. v. Pittsburgh Miracle Mile Town & Country Shopping Ctr., Inc.*, 219 F. Supp. 400, 403 (W.D. Pa. 1963) ("[R]eal estate is not a 'commodity' within the meaning of the Robinson-Patman Act."); *see also Fleetway, Inc., v. Pub. Serv. Interstate Transp. Co.*, 72 F.2d 761, 763–64 (3d Cir. 1934) (holding that bus transportation was not a commodity under the Clayton Act, prior to the 1936 amendment); *Empire State Pharm. Soc'y, Inc. v. Empire Blue Cross & Blue Shield*, 778 F. Supp. 1253, 1258–59 (S.D.N.Y. 1991) (imposing Rule 11 sanctions because there exists "an abundance of authority establishing that the Robinson-Patman Act applies only to goods and commodities and does not apply to services such as insurance"). The word

commodity is "restricted to products, merchandise or other tangible goods." *TV Signal*, 462 F.2d at 1259 (internal quotation marks and citation omitted).

Other Circuits have held that Section 2(c) of the Robinson-Patman Act is similarly limited to commodities. *See, e.g.*, *Baum v. Invs. Diversified Servs., Inc.*, 409 F.2d 872, 874–76 (7th Cir. 1969) (affirming dismissal and explaining that Sections 2(c) is restricted to tangible goods like Section 2(a)); *Freeman v. Chicago Title & Tr. Co.*, 505 F.2d 527, 529 (7th Cir. 1974) (affirming that Section 2(c) does not apply to the "sale of intangibles such as insurance"); *May Dep't Store v. Graphic Process Co.*, 637 F.2d 1211, 1214 (9th Cir. 1980) (stating that the law requires a claim under Section 2(c) to "constitute a sale of 'goods, wares, or merchandise' and not merely a contract for services"); *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 507 (S.D.N.Y. 2006), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (granting motion to dismiss because the alleged bribes "related only to licenses, and not to any goods").

Like the Second, Seventh, and Ninth Circuits, this Court also finds that Section 2(c) is limited to the sale of tangible goods. When read as a whole, the text of the Robinson-Patman Act makes clear that this is the case. For example, Section 2(c) uses the words "such transaction," which beg the question: What transaction? The reader cannot answer that question without reading Section 2(a). Section 2(a) provides, as relevant here, that "nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in *bona fide transactions*." (Emphasis added.) This is the Act's first reference to a "transaction," and the word "transaction" is not used again until used in Section 2(c). It naturally follows then that

"such transaction" refers to "bona fide transactions" and its limitations. As explained above, Section 2(a) is limited to commodities. Taken together, the only reasonable interpretation of Section 2(c) is that it prohibits an agent from receiving anything of value in a sale of a commodity. Moreover, as cited above, the legislative history shows that Congress enacted the Robinson-Patman Act to address broker arrangements relating to the sale of *commodities*—nothing suggests that it was meant to apply to services. *See Freeman*, 505 F.2d at 529–30 ("[W]e find no affirmative evidence that Congress intended § 2(c) to be the only Robinson-Patman provision applicable to intangibles.").

In urging the Court to reach a different decision, Plaintiff cites *Ideal Plumbing Co. v. Benco, Inc.*, 529 F.2d 972 (8th Cir. 1976). (Pl.'s Opp'n at 10–12.) But that case does not guide the Court on this issue. In *Ideal Plumbing*, the plaintiff alleged that the defendants violated Section 2(c) of the Robinson-Patman Act for unfair practices when denying it a construction contract. 529 F.2d at 974–975. After the jury returned a verdict in favor of the plaintiff, the defendants moved for judgment notwithstanding the verdict, which the district court granted. *Id.* at 975. The district court held that, as a matter of law, no violation of the Robinson-Patman Act occurred for the following three reasons: (1) "there had been no sale of goods, wares, or merchandise," (2) there had been no payment "in lieu of commission or brokerage," and (3) there was a reduction in price in exchange for legitimate services, which is permitted by Section 2(c)'s exception. *Id.* (internal quotation marks omitted).

Although the plaintiff appealed all three grounds, the Eighth Circuit only needed to find one of those grounds valid to affirm. *See id.* at 975, 978 n.6. And the court affirmed

11

based on only one of those grounds—that the discount or allowance was not paid in lieu of a brokerage commission. *Id.* at 977, 979. Because the court affirmed on that ground, it did not analyze whether the district court erred by holding that Section 2(c) only governs the sale of goods, wares, or merchandise. *See id.* at 978 n.6.

Notably, however, in reaching its decision, the Eighth Circuit noted that "despite the apparently broad reach of the Section 2(c) terminology 'commission, brokerage, or other compensation', these words do not automatically act to prohibit all forms of negotiated price reduction." (*Id.* at 977.) Instead, the court explained, "the words 'or other compensation' are *intimately related to the purpose of the section* and *should be construed* to mean compensation in the nature of a commission or brokerage—in other words, compensation for placing or obtaining an order for *the purchase or sale of goods*." (*Id.* (emphasis added).) The Court here agrees.

For these reasons, even taking all of the facts alleged in the Complaint as true, Plaintiff has failed to state a claim under Section 2(c) of the Robinson-Patman Act, and, therefore, Count IV must be dismissed. This same analysis applies to all of the named Defendants and, accordingly, Count IV is dismissed with respect to all of them.

### C. The Remaining Causes of Action

Under 28 U.S.C. § 1367(c)(3), the district court may "decline to exercise supplemental jurisdiction" over remaining state-law claims after dismissing the federal claims. *Rau v. Roberts*, Civ. No. 08-2451 (RHK/JJK), 2010 WL 396223, at *8 (D. Minn. Jan. 27, 2010), *aff'd*, 640 F.3d 324 (8th Cir. 2011). The Eighth Circuit has repeatedly advised district courts to "exercise judicial restraint and avoid state law issues wherever

possible." *Gregoire v. Class*, 236 F.3d 413, 420 (8th Cir. 2000) (internal quotation marks and citation omitted). Here, only state-law claims remain. Therefore, the Court declines to exercise its supplemental jurisdiction and dismisses the remaining counts without prejudice.

### III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Motions to Dismiss [Doc. Nos. 26, 37, 48] are **GRANTED WITH PREJUDICE** as to Count IV as to all Defendants;

2. The Motions to Dismiss [Doc. Nos. 26, 37, 48] are **GRANTED WITHOUT PREJUDICE** as to Counts I–III, V–IX as to all Defendants;

3. The Motion for Judgment on the Pleadings [Doc. No. 44] is **DENIED AS MOOT**;

4. The Motion to Transfer Venue [Doc. No. 53] is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 9, 2021                                s/ Susan Richard Nelson
                                                                         SUSAN RICHARD NELSON
                                                                         United States District Judge